UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JARED M.,                                                    Case No. 6:22-cv-00265-AR

                      Plaintiff,                             OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                      Defendant.

_____

**ARMISTEAD, Magistrate Judge**

        In this judicial review of the Commissioner's final decision denying Social Security

benefits, plaintiff Jared M. (his last name omitted for privacy) challenges the Administrative Law

Judge's evaluation by failing to identify specific, clear and convincing reasons for discounting

his subject symptom testimony, improperly finding the medical opinion of neurologist Yulia

Whidden, FNP, unpersuasive, and incorrectly assessing whether plaintiff met a listing of

disability under step three of the ALJ's evaluation. Because the court finds plaintiff's arguments

Page 1 – OPINION AND ORDER

to be persuasive, the Commissioner's decision is reversed and remanded for an immediate award of benefits.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income (SSI) on July 16, 2019, alleging disability beginning on June 20, 2017. (Tr. 201, 207.) His claims were initially denied on December 2, 2019, and again upon reconsideration on March 6, 2020. (Tr. 85, 95, 112, 125.) Afterwards, plaintiff filed for a hearing that was held before the ALJ on January 15, 2021. (Tr. 33.)

In denying plaintiff's applications for DIB and SSI, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Tr. 17.) At step two, the ALJ determined that he had the following severe impairment: seizure disorder. (Tr. 18.) At step three, the ALJ determined that his impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 21.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff has the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: no climbing of ladders, ropes, or scaffolds, or working at unprotected heights; no work around dangerous,

---

[1]     This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]     To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

unprotected, major manufacturing machinery; no work around deep, open bodies of water; and no work involving commercial driving. (Tr. 21.)

At step four, the ALJ determined that plaintiff can perform past relevant work as a customer service representative, call center, as it is actually and generally performed. (Tr. 26.) With RFC in hand, the ALJ found at step four that plaintiff could perform his past relevant work as a customer service representative. (Tr. 26.) Because plaintiff could perform his past relevant work the ALJ did not make alternative step five findings. (Tr. 27.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

A.    ***Basis for Discounting Plaintiff's Testimony***

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014);

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 416.929. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017).

Plaintiff contends that he cannot engage in full-time, competitive employment because of his mental and physical health conditions, including grand mal seizures, simple and complex seizures, left shoulder becoming easily dislocated, general stomach issues, depression, anxiety, and epilepsy. (Tr. 225.) In his view, the unpredictability of his seizures causes a constant state of anxiety, which can lead to long bouts of depression. (Tr. 233.) Plaintiff reports being under constant stress of having a grand mal seizure while asleep or awake, which causes him to lose sleep. (Tr.234.) Following a seizure, he can often be bedridden for a full day. (Tr. 234.) Plaintiff has been engaged in counseling and takes various medications for his epilepsy and stomach issues. (Tr. 227.)

At the hearing, plaintiff said that he has been experiencing seizures since he was 14 or 15 years old but was not diagnosed with a seizure disorder until age 18 or 19, after he had his first grand mal seizure. (Tr. 46-47.) Plaintiff worked in customer service but quit when his seizure disorder worsened, and, after unsuccessfully attempting to get his seizures under control on his own, he returned to his old job, where he was eventually let go because his seizure activity caused him to miss work. (Tr. 44-45.) Plaintiff clarified that he has not worked since his alleged onset date and explained that, although there is a note in his medical records about recent work in an office answering phones in December 2020, the note is incorrect insofar as he was not

Page 4 – OPINION AND ORDER

currently working but was looking for work and finding the process stressful. (Tr. 45, 596.) During the summer, he and his father were helping his grandmother with yard work, an activity he stopped due to early morning seizure activity. (Tr. 46.) When asked about his changing medications, plaintiff answered that his medications and dosages have been constantly changing since 2017 and that things are starting to balance out now. (Tr. 47.) Around 2017, when his grand mal seizures were worsening, plaintiff reported having approximately two a week, and anywhere from five to eight per month. (Tr. 47.) Due to the grand mal seizures, plaintiff dislocated his shoulder, broke his front teeth, and had other fall-related injuries. (Tr. 48).

In 2019, plaintiff improved after getting consistent treatment from a neurologist and adjusting his medication. (Tr. 49.) At the hearing, plaintiff said he was taking Keppra, Vimpat, clonazepam, and buspirone for his seizures. (Tr. 61.) In 2020, he improved with, at most, only two or three grand mal seizures a month, with most occurring at night, which are easier for him to handle. (Tr. 49.) His nocturnal seizures leave him in severe body pain which take a few days to fully dissipate and exhausts him to the point of sleeping 12 or more hours at a time. (Tr. 50.) When asked about his simple and complex partial seizures, he responded that they last from 30 to 60 seconds, his mind goes blank, he cannot function, he may have auditory and visual hallucinations, and they leave him exhausted and sweaty. (Tr. 51.) On bad days, he has partial seizures five to 10 times an hour throughout the day, they drop his productivity at work by up to 50 percent, and he needs five to 10 minutes to fully recover each time. (Tr. 51-52, 59.) Although plaintiff can sometimes feel a partial seizure coming, the grand mal seizures are unpredictable. (Tr. 54.)

The ALJ discounted plaintiff's subjective symptom testimony because: (1) his level of activity was inconsistent with his allegations; (2) his statements were inconsistent with his

Page 5 – OPINION AND ORDER

medical records; and (3) his condition improved with treatment. Plaintiff challenges the ALJ's assessment of his subjective symptom testimony.

### 1.  Daily Activities

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)). Further, the "ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

The ALJ discounted plaintiff's subjective symptom testimony because he can:  walk up to two miles before needing to stop, pay attention for up to three hours, follow instructions well, manage his own personal care and hygiene, prepare meals, perform typical household chores, use public transportation, shop multiple times per week, has hobbies, and spends time with others. (Tr. 23, citing Tr. 235-38.) The ALJ also relied on plaintiff's reports of helping his grandmother start a vegetable garden, playing music for a couple of hours each week, and playing video games and watching television for four to eight hours a day. (Tr. 23, citing Tr. 237.)

Here, the ALJ did not explain how plaintiff's ability to perform these daily activities undermines his testimony. Neither did the ALJ find that plaintiff spent a "substantial" portion of his day engaged in household chores or that these activities are transferrable to a work environment. *Ghanim v. Colmin*, 763 F.3d 1154, at 1165. Because the ALJ did not connect these activities to any symptom or the degree of any symptom alleged by plaintiff, this fails to provide a specific, clear and convincing basis upon which to discount plaintiff's subjective symptom testimony. *See Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

## 2. Treatment

The ALJ also discounted plaintiff's subjective symptom testimony because he had instances of noncompliance with his medication and no longer required emergency department visits after starting regular care with a neurologist. (Tr. 23.) The ALJ made note of exactly one instance of noncompliance in January 2018, which resulted in plaintiff reporting to the emergency department for treatment. (Tr. 23, 341.) There, however, plaintiff had run out of his medication for a week and was having trouble getting his prescription refilled as an outpatient. (Tr. 341.) Although he did well after receiving a loading dose of Keppra due to a grand mal seizure he suffered while in the emergency department, that one instance of improvement does not by itself indicate meaningful improvement, nor does it show noncompliance as a major factor. (Tr. 341.)

Reviewing the record from plaintiff's alleged onset date to his date last insured, even when compliant, plaintiff still suffered from grand mal seizures. *See*, e.g., (Tr. 421 (reportedly experienced multiple seizures between August and September 2018)); (Tr. 370 (emergency room visit on March 10, 2019 due to head injury from grand mal seizure)); (Tr. 412-13 (reported grand

mal seizure on June 11, 2019)); (Tr. 406 (reported increase in seizures on July 10, 2019)); (Tr. 395 (reported to emergency department due to seizures with vomiting, confusion, diaphoresis, and abdominal pain)); (Tr. 442 (reported increasing seizures on August 22, 2019)). Even after plaintiff's medication dosage was increased on September 25, 2019, plaintiff reported one generalized seizure in October, three in November, and one in December. (Tr. 464, 494.)

Although plaintiff no longer required emergency department visits, the ALJ does not explain how that relates to his seizures. Not seeking emergency department assistance for seizures does not equate to no longer experiencing them and their effects. The ALJ's finding is not supported by substantial evidence, is not a reasonable interpretation of the record, and therefore, is not a clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 3. Inconsistent Statements

The ALJ cited inconsistencies between the plaintiff's reported symptoms and his medical records. (Tr. 23.) Specifically, the ALJ found that plaintiff had generally normal neurologic function without significantly altered mental status or other postictal symptoms; physical injuries following seizures that did not result in significant deficits or loss of function; regular care with a neurologist resulted in no more emergency department visits; and that he was more active than he alleged because he helped his grandmother start a vegetable garden. (Tr. 23, citing Tr. 237, 340-42, 370-73, 386, 397, 457-65, 494-98, 540, 544, 596-601, 605, 611.) The ALJ also cited reports of plaintiff looking for work in August 2020, working night shifts in September 2020, and that he was working in December 2020. (Tr. 24, citing Tr. 528, 596, 599.) Given those findings, the ALJ found that plaintiff was "capable of working on some level," and that working in a vegetable garden by "its very nature require[s] working outdoors, doing more arduous

Page 8 – OPINION AND ORDER

activities, he can do work as noted in the residual functional capacity." (Tr. 24.) The court is unconvinced.

Plaintiff's generally normal neurologic functions are not inconsistent with his reports of experiencing seizures, nor with their severity and frequency, especially in light of an electroencephalogram from February 2019 showing "abundant left temporal epileptiform discharges… indicative of underlying high risk for focal seizures" and "focal temporal slowing…consistent with underlying focal neuronal dysfunction." (Tr. 349.) Even without the electroencephalogram, the ALJ failed to link the normal neurologic function results to the specific symptoms plaintiff reported. Likewise, although plaintiff's physical injuries due to seizures are troubling, they are not linked to anything that creates an inconsistency in plaintiff's testimony. As for plaintiff no longer needing regular emergency room visits and helping start a vegetable garden, the court has addressed those issues above and the same reasoning applies here.

The ALJ's reliance on plaintiff's reports of either working or looking for work in August, September, and December 2020 as a basis for discounting plaintiff's testimony are also unsupported by substantial evidence. (Tr. 24.) At the hearing, plaintiff testified that the record regarding working in an office in December 2020 was incorrect. (Tr. 45.) He testified that he was speaking to his medical provider about seeking work and that doing so was stressful, not that he was currently working. (Tr. 45.) Regarding the September 2020 night shifts, he testified that he was only partially involved and that he was helping to set up offices and computer equipment. (Tr. 62-63.) Without more information, the ALJ's finding is an unreasonable interpretation of the record. As such, the ALJ's assessment of inconsistent statements does not serve as a clear and convincing basis for discounting plaintiff's subjective symptom testimony.

Page 9 – OPINION AND ORDER

**B.**     *Evaluating the Medical Opinion of Yulia Whidden, FNP*

For disability claims filed on or after March 27, 2017, new regulations for evaluation

medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical*

*Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan

18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but

instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The

new regulations eliminate the hierarchy of medical opinions and state that the agency does not

defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v.*

*Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly

irreconcilable with our caselaw according special deference to the opinions of treating and

examining physicians on account of their relationship with the claimant.") Under the new

regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions

in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability is determined by whether the medical source presents explanations and objective

medical evidence to support his or her opinions. *Id.* §§ 404.1520c(c)(1), 416c(c)(1). Consistency

is determined by how consistent the opinion is with evidence from other medical and nonmedical

sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ also may consider a medical source's relationship with the claimant by looking

at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the

claimant's examinations, and whether there is an examining relationship. *Id.* §§ 404.1520c(c)(3),

416c(c)(3). An ALJ is not, however, required to explain how they considered those secondary

medical factors unless they find that two or more medical opinions about the same issue are

equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-

Page 10 – OPINION AND ORDER

(3), 416c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(c)(b), 416c(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").[3] *Id.*

In assessing plaintiff's RFC, the ALJ found unpersuasive the medical opinion of Yulia Whidden, FNP, plaintiff's neurologist, because she recommended that plaintiff apply for disability benefits due to easily triggered seizures, plaintiff's seizure symptoms improved with better medication compliance, and his examinations rarely indicated neurological deficits. (Tr. 25.) In the ALJ's view, Whidden's opinion was only persuasive for common sense seizure precautions, such as not driving, swimming alone, working at heights, or operating heavy machinery. (*Id.*)

Plaintiff asserts that the ALJ did not properly consider Whidden's entire medical opinion, including Whidden's report regarding plaintiff's seizure frequency, her description of plaintiff's postictal symptoms and their duration, or her determination regarding plaintiff's need to rest after experiencing a seizure. (Pl.'s Br. at 14-15.) Plaintiff also asserts that the ALJ ignored Whidden's opinion indicating that exertion was also a factor in precipitating plaintiff's seizure activity.

---

[3]     Under the new framework, the ALJ is no longer required to "provide specific and legitimate reasons for rejecting an examining doctor's opinion;" rather, the ALJ's reasons must "simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

(Pl.'s Br. at 15.) The Commissioner argues that not only does substantial evidence support the ALJ's finding, but also that Whidden's medical opinion is an "other medical source" because it does not contain "a statement from a medical source about what you can still do despite your impairment(s)." (Def.'s Br. at 9-10, citing 20 C.F.R. §§ 404.1513(a)(2), 416.1512(a)(2)). Therefore, the ALJ had no duty to assess Whidden's medical records "pursuant to the regulations governing medical opinions." (Def.'s Br. at 10, citing 20 C.F.R. §§ 404.1520c, 416.920c.))

The court agrees with plaintiff: the ALJ's findings are unsupported by substantial evidence and are insufficient explanations for discounting Whidden's opinion.

Whidden met with plaintiff for his epilepsy every three months, starting on February 18, 2020. (Tr. 494, 657.) On February 18, 2020, plaintiff reported having generalized seizures in the last four months, and partial complex seizures with alteration of consciousness. (Tr. 494.) In her treatment notes from May 2020, Whidden noted that plaintiff had grand mal seizures in March and April, which occurred while sleeping, along with two episodes of partial seizures when he did not feel good, which left him being unable to speak and process information for an hour. (Tr. 611.) She also noted that plaintiff had a grand mal seizure in June, along with a partial seizure where he described hallucinating. (Tr. 605.) The partial seizure repeated approximately 10 times throughout the day, happened every two to three weeks without provocation, and lasted for two to three minutes. (Tr. 605.) Whidden's notes show that, on December 2, 2020, plaintiff reported having a grand mal seizure in November and that he continued to have partial seizures lasting for two to three minutes, repeating throughout the day, and occurring every two to three weeks without provocation. (Tr. 596.) Based on her treatment notes, Whidden provided a medical source statement opining that plaintiff suffers four to five seizures a month, needs three to six hours of rest after a seizure, that he suffers confusion following a seizure for three to six hours,

Page 12 – OPINION AND ORDER

that he loses consciousness during seizures, that stress and exertion can precipitate a seizure, and that they can happen at any time. (Tr. 657-58.) Whidden did not indicate how much plaintiff could sit, stand, or walk, how many pounds he could lift and carry, how much work stress he could handle, or state that he would need unscheduled breaks during an eight-hour workday outside of time away from work due to seizures and postictal phenomena. (Tr. 658-59.)

The ALJ does not address Whidden's accounts of plaintiff's seizures, whether partial or grand mal, the amount of time he would need to rest after a seizure, the postictal effects the seizures have, the frequency of those seizures, and how they would affect plaintiff in a normal work environment, or any limitations presented in her treatment notes or the medical source opinion. In addition, the evidence the ALJ cites in rejecting Whidden's opinion are taken out of context, such as Whidden's recommendation that plaintiff apply for disability being described as a "statement that claimant is disabled," or simply does not address plaintiff's seizures. (Tr. 25, citing Tr. 497, 521-558, 590-95, 612.) The ALJ's findings that plaintiff improved with treatment and rarely showed neurological deficits were addressed, and rejected, in an earlier portion of this opinion. As for the Commissioner's argument that the ALJ was not required to address Whidden's opinion by the same regulatory standards as that of a medical opinion, it contradicts the analysis the ALJ conducted, which assessed Whidden's medical opinion for its supportability and consistency, and therefore fails because it is a post hoc rationalization. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

In light of Whidden's treatment notes supporting her opinion, the ALJ's determination that her opinion is unpersuasive is not backed by substantial evidence and is an unreasonable interpretation of the record; the ALJ has erred.

Page 13 – OPINION AND ORDER

C.    *Step Three – Seizure Disorders*

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals an impairment listed in the Appendix to the federal regulations (the Listings), 20 C.F.R. 404, subpart P, Appendix 1, and must satisfy the duration requirement, 20 C.F.R. § 416.920(a)(4(iii). The listings describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525. 416.925. An impairment "meets" a listing if it meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id*.

Plaintiff argues that the ALJ erred by finding that plaintiff did not meet or equal listing 11.02 for seizures. Specifically, plaintiff argues that the submitted evidence meets the frequency requirement and that his noncompliance is related to his initial breakthrough seizure in 2016 and the seizure in March 2019, but is not related to his ongoing tonic-clonic seizures.

Listing 11.02A for generalized tonic-clonic seizures is met by documentation of a detailed description of a typical seizure, occurring at least once a month for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R Pt. 404, Subpt. P,App.1 § 11.02A. Listing 11.02B for dyscognitive seizures is met by documentation of a detailed description of a typical seizure, occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P,App. 1 § 11.02B. Listing 11.02C for generalized tonic-clonic seizures is met by documentation of a detailed description of a typical seizure, occurring at least once every two months for at least four consecutive months despite adherence to prescribed treatment, and a marked limitation in

physical functioning, understanding, remembering, or applying information, concentrating,

persisting, or maintaining pace, or adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt.

P,App. 1 § 11.02C. The ALJ found that plaintiff's seizures did not meet listing 11.02 because

evidence does not support the required frequency or limiting effects of the alleged seizure

activity, and that plaintiff has a history of noncompliance with treatment. (Tr. 21.)

Numerous records exist, as discussed within this opinion, describing plaintiff's ongoing

tonic-clonic seizures despite compliance with medication, along with observed postictal signs

after experiencing a seizure while admitted to the emergency department. Furthermore, the ALJ

failed to discuss plaintiff's dyscognitive seizures at all. Therefore, the ALJ's step-three findings

are unsupported by substantial evidence. Even if the ALJ had provided substantial evidence in

support of their finding, the ALJ's failure to discuss plaintiff's dyscognitive seizures amounts to

harmful legal error.

**D.    *Remedy***

A reviewing court has discretion to remand an action for further proceedings or for a

finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141

(9th Cir. 2014). Whether an action is remanded for an award of benefits or for further

proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d

1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court

conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that

analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons

for rejecting evidence; (2) the record has been fully developed and further proceedings would

serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the

ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d

Page 15 – OPINION AND ORDER

403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Plaintiff argues that he merits an award for an immediate payment of benefits because his testimony and the medical opinion from Whidden, if properly credited, supports a determination that he is unable to sustain competitive employment. The court agrees and finds that plaintiff has satisfied the credit-as-true standard.

As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's subjective testimony and Whidden's opinion. Plaintiff testified that he suffers from two to three grand mal seizures per month and suffers from simple and complex partial seizures frequently, sometimes up to five to 10 times per hour, and that his seizures drop his productivity by 50 percent. (Tr. 49, 51-53, 59.) Whidden opined that plaintiff has four to five seizures a month, that he needs three to six hours of rest after a seizure, and that he suffers from confusion for three to six hours after a seizure. (Tr. 657-58.) At the hearing, the vocational expert testified that being off-task for more than 15 percent in a work day would eliminate competitive employment. (Tr. 69.) When plaintiff's and Whidden's evidence is credited as true, the ALJ would be required to find plaintiff disabled and remand for further proceedings would serve no useful purpose.

Given that evidence, and the court's review of the entire record, the court has no "serious doubt" as to whether plaintiff is disabled. *See Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that, where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled"). Accordingly, the court exercises its discretion to credit the erroneously discredited evidence as

true and remands this case for an immediate calculation and payment of benefits.

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for an immediate calculation and award of benefits.

ORDERED on October 27, 2023.

_____
JEFF ARMISTEAD
United States Magistrate Judge